# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ROBERT JOHNSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-00223 |
| ) | Judge Aleta A. Trauger |
| ) | |
| METRO GOVERNMENT OF NASHVILLE ) | |
| AND DAVIDSON COUNTY, ALFREDO ) | |
| AREVALO, Sergeant, in his individual ) | |
| capacity, and STEVE ANDERSON, Chief of ) | |
| Police, in his official capacity and individual ) | |
| capacity, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

Robert Johnson has filed a Motion for Leave to Amend Complaint (Docket No. 21), to which the Metropolitan Government of Nashville and Davidson County ("Metro") and Sergeant Alfredo Arevalo have filed a Response (Docket No. 24). For the reasons set out herein, the motion will be granted.

## I. BACKGROUND

### A. Johnson's Original Allegations[1]

On January 26, 2014, Shondell Martin was killed by a single gunshot at an Elks Lodge in Nashville. (Docket No. 1 ¶¶ 7–11.) At the time, Robert Johnson, his wife, and his brother-in-law were also at the Elks Lodge, for a birthday party. (*Id.* ¶¶ 7, 9.) Johnson describes a dimly lit, crowded scene, with loud music playing and large amounts of alcohol being consumed. (*Id.* ¶ 12.) Johnson was wearing blue jeans and a black coat with a Bugs Bunny logo on the front. (*Id.* ¶ 16.)

---

[1] The facts in this section are taken from Johnson's original Complaint (Docket No. 1), unless otherwise indicated.

1

According to witnesses, Martin's shooter was wearing a gray hoodie and a brown jacket and fled in a white Chevy Malibu. (*Id.* ¶ 15.)

Sergeant Arevalo was assigned to investigate the shooting. (*Id.* ¶ 13.) According to Johnson, Arevalo oversaw the investigation in a manner designed only to produce evidence of Johnson's supposed guilt, not uncover the truth. (*Id.* ¶¶ 20–22.) Despite the differences between Johnson's clothing and the shooter's, and despite the fact that Johnson and his wife did not drive a white car, Arevalo sought and received an arrest warrant for Johnson. In support of that warrant, Arevalo provided an affidavit in which he claimed that a witness had told him that Johnson was the shooter. Johnson maintains that the affidavit was false and that there was no such witness. (*Id.* ¶¶ 18–19.) Arevalo also conducted photographic lineups that, Johnson alleges, were unduly suggestive, in order to support his pursuit of Johnson. (*Id.* ¶ 27.) Johnson alleges that Arevalo's decision to focus exclusively on him as a suspect was due to Arevalo's having learned of Johnson's "background," which the court takes to mean his criminal history. (*Id.* ¶ 21.)

Johnson's bond was set at $500,000, which he could not pay. He was incarcerated for over three and one-half years awaiting trial. (*Id.* ¶¶ 30–31.) When the case did finally go to trial, he was acquitted after 45 minutes of jury deliberation. (*Id.* ¶ 43.) On March 12, 2019, Johnson filed his Complaint in this court, alleging causes of action under 42 U.S.C. § 1983 against Arevalo in his individual capacity, Metro Chief of Police Steve Anderson in his official and individual capacities, and Metro. He also pleaded a claim for malicious prosecution under Tennessee common law, although it is unclear whether that claim is directed at defendants other than Arevalo. (Docket No. 1 ¶¶ 32–47.) In his original Complaint, Johnson alleged that "Arevalo['s] use of a photographic lineup identification procedure is widespread practice for MNPD which is so permanent and well settled it constitutes a custom of the MNPD," but he did not provide much detail about the allegedly

inappropriate procedure. (*Id.* ¶ 34.) Johnson also included the following two paragraphs, directed specifically at Metro's responsibility for his alleged mistreatment:

> 48. The Metropolitan Police Department, through its agents, servants, or employees have established a practice, policy, or custom of inadequate training or supervision of its police officers regarding their duty in general, and the Defendant in particular, to disclose exculpatory evidence in determining probable cause to arrest and in prosecuting a citizen accused of a crime.
>
> 49. The Metropolitan Police Department's above-described practice, policy, or custom deprived others in general, and Plaintiff in particular, of one or more of the following constitutional rights: The right to be free from unreasonable search and seizure contrary to Amendments IV and XIV of the United States Constitution. The right to due process of law and to a fair trial, contrary to Amendment XIV of the United States Constitution.

(*Id.* ¶¶ 48–49.)

On May 13, 2019, Metro filed a Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6), arguing that Arevalo had failed to allege any wrongdoing by Metro itself that would be sufficient to create municipal liability. (Docket No. 8 at 1.) The time to file a response to a motion to dismiss is 14 days, meaning that Johnson should have filed a response by May 27, 2019. L.R. 7.01(a)(3). He did not do so. On June 6, 2019, Johnson filed an Unopposed Motion for Extension of Time to Respond. (Docket No. 13.) In the motion, Johnson claimed that the deadline for his response was June 3, 2019, based presumably on his counsel's belief that the time for responding to a motion to dismiss in this district is 21 days, the amount of time permitted to respond to a motion for summary judgment. (*Id.* at 1.) Johnson, through his attorney, explained that, "given existing calendar obligations," Johnson required until June 28, 2019 to file his response. (*Id.*) The defendants did not object to the extension (*id.*), and it was granted (Docket No. 15).

On June 28, 2019, Johnson filed a Second Motion for Extension of Time to Respond, again citing "existing calendar obligations," seeking an extension of the deadline until July 12, 2019. (Docket No. 18 at 1.) Johnson's counsel stated that she had "attempted to confer[] with counsel

3

for the defendants," but that she had not been "able to reach counsel yet." (*Id.*) The court granted the motion. (Docket No. 19.)

The July 12, 2019 deadline passed without the filing of a response. On July 22, 2019, Johnson filed an Unopposed Third Motion for Extension of Time to Respond, seeking to extend the deadline to that day, July 22. (Docket No. 20 at 1.) Johnson's counsel again cited "existing calendar obligations." (*Id.*) The court granted the motion. (Docket No. 23.) Also on July 22, Johnson filed a Motion to Amend Complaint that his counsel characterized as "unopposed." (Docket No. 21 at 1.) Metro quickly filed a preliminary Response, informing the court that the Motion to Amend was not, in fact, unopposed and that Metro reserved the right to file a response in opposition. (Docket No. 22.)

**B. Johnson's Proposed New Allegations**

Johnson's original Complaint contains 49 paragraphs of allegations; his proposed Amended Complaint contains 216. Metro alleges that over 70 of the new paragraphs are taken verbatim from the Complaint in another case, *Estate of Daniel Hambrick v. Metropolitan Government of Nashville-Davidson County, Tennessee*, Case No. 3:19-cv-00216.[2] Those particular paragraphs—paragraphs 8 through 82—are devoted to a general discussion of issues related to the Metropolitan Nashville Police Department ("MNPD"). Among the topics addressed are MNPD's handling of civilian complaints, its refusal to equip officers with audiovisual recorders, its alleged history of race discrimination, and its resistance to police reform efforts. (Docket No. 21-1 ¶¶ 8–82.) None of the allegations in these paragraphs appears to bear directly on Johnson's case, other than by painting a picture of general dysfunction and resistance to accountability at MNPD.

---

[2] Counsel for Johnson is not counsel for any party in the *Hambrick* case.

The proposed Amended Complaint then includes a brief section under the heading, "MNPD encourages officers to be deceptive." That section reads as follows:

> 83. MNPD manual states "investigators should be limited only by their imagination in developing innovative and/or legally sound means to obtain pertinent information."
>
> 84. Mr. Johnson was arrested on October 17, 2014 based on an arrest warrant obtained by [sentence not completed.]
>
> 85. Mr. Johnson's step son was also arrested on October 17, 2014.

(*Id.* ¶¶ 83–85.)

The proposed Amended Complaint then begins a new section consisting of several paragraphs alleging that MNPD performed traffic stops of Johnson's wife in an attempt to exert pressure on her to cooperate in the MNPD investigation. (*Id.* ¶¶ 86–93.) The next two sections provide a more detailed account of the allegedly flawed investigation overseen by Arevalo but do not significantly address Metro's role at an organizational or policy level. (*Id.* ¶¶ 94–121.) The next section, section N, goes into more detail regarding witnesses' participation in photographic lineups including Johnson. On the subject of Metro policy, this section alleges:

> 124. According to the Department of Justice, *Eyewitness Evidence A Guide for Law Enforcement*, the investigator should "consider placing suspects in different positions in each lineup, both across cases and with multiple witnesses in the same case. Position the suspect randomly in the lineup.
>
> 125. MNPD does not have a policy of randomizing the positions of suspects in photographic line-ups across cases.
>
> 126. MNPD does not have a policy of randomizing the positions of suspects with multiple witnesses in the same case.
>
> 127. MNPD has a practice of making the suspect "number 5" in a photographic line-up.

(*Id.* ¶¶ 124–27 (citation omitted).) Johnson then goes into detail about the photographic lineups used in his case, including allegations of non-randomized numbering, as well as other alleged

5

defects that are not tied directly to an MNPD practice or policy other than that Arevalo *did not* comply with MNPD policies. (*Id.* ¶¶ 128–71.) The remaining paragraphs of the proposed Amended Complaint consist primarily of a reiteration of the allegations of the original Complaint, albeit with a few additional details. (*Id.* ¶¶ 172–216.)

On August 5, 2019, Metro and Arevalo filed a Response in opposition to the Motion to Amend. (Docket No. 24.) The defendants argue that Johnson's new allegations do not cure his failure to establish liability on behalf of Metro and that the new allegations related to the photographic lineups do not establish a constitutional violation because the lineups did not deprive him of a fair trial. (*Id.* at 2–7.) The defendants suggest that, because Johnson's "only response to Metro's previously filed motion to dismiss the initial Complaint was to file a motion to amend," he "has conceded that the initial Complaint did not state a claim against Metro and, if leave to amend is denied, Metro should be dismissed as a Defendant." (*Id.* at 2 n.2) Johnson has not requested to file a Reply.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course either within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, the court should "freely" give leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend, moreover, may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

### III. ANALYSIS

A government entity such as Metro cannot be held liable under § 1983 on the basis of *respondeat superior* for the actions of its employees but can be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In order to establish a basis for municipal liability, a plaintiff must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations.*"* *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). After identifying an illegal municipal policy or custom, the plaintiff must further demonstrate a "direct causal link between the custom and the constitutional deprivation; that is, [he] must show that the particular injury was incurred because of the execution of that policy." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) (quoting *Doe v. Claiborne Cty.*, 103 F.3d 495, 505 (6th Cir. 1996)).

Most of the MNPD policies or customs that Johnson now describes in his proposed Amended Complaint, particularly those allegedly taken from the *Hambrick* Complaint, lack a meaningful causal link to his case. Johnson has not explained, for example, why Metro's supposed poor handling of civilian complaints contributed in any way to Arevalo's alleged decision to use false evidence against Johnson or to perform unduly suggestive photographic lineups. Johnson's

general allegations of MNPD wrongdoing or lack of accountability, therefore, are insufficient to overcome Metro's argument that he cannot establish municipal liability.

A few of Johnson's allegations regarding MNPD policies and practices are, however, relevant to his case, namely (1) its alleged policy of "encourag[ing] officers to be deceptive," and (2) its custom of repeatedly using the number 5 for a suspect's photograph in photographic lineups. With regard to the first of those allegations, however, the actual facts that Johnson has alleged simply do not state a policy or custom of encouraging deception. He relies solely on an oddly worded passage in MNPD's Manual suggesting that "investigators should be limited only by their imagination in developing innovative and/or legally sound means." That language, robbed of any context, could be read as suggesting that, if techniques are innovative, they do not have to be legally sound. There is, however, a much more plausible reading. The suggestion that "investigators should be limited only by their imagination in developing innovative and/or legally sound means" can be read as encouraging officers to use their imaginations in developing innovative techniques *and* in devising ways to keep their techniques legal. Of course, not all investigations require much imagination, and some might require imagination with regard to one aspect but not the other, explaining the "or." No reasonable reader would interpret the cited language as MNPD's admitting, in publicly available writing, that MNPD investigators should use illegal means as long as those means are innovative. Moreover, even if the Manual did give that impression, Johnson has not identified any way in which the Manual's poor wording actually caused Arevalo's alleged misconduct. This allegation, therefore, cannot support a finding of municipal liability under § 1983.

In contrast, the allegation that MNPD, as a matter of ordinary practice, uses the number 5 slot in photographic lineups for officers' preferred suspect is an allegation of an organizational-

8

level custom that, if otherwise supportive of a finding that constitutional rights were violated, could support municipal liability. The issue, then, becomes whether Johnson's suggestive-lineup allegations are sufficient to support a § 1983 claim. "[A] suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest," but the "admission at trial of an unnecessarily suggestive lineup" may violate "a defendant's due process rights . . . depend[ing] upon the totality of the circumstances." *Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) (quoting Manson v. Brathwaite, 432 U.S. 98, 113 n.13 (1977)). The Sixth Circuit has also left open the possibility that, even if an unduly suggestive lineup is not used to deprive a defendant of his right to a fair trial, the government's use of the lineup might violate due process in certain "extraordinary circumstances, such as [those involving] coercion or other police misconduct." *Id.* (citing *Hensley v. Carey*, 818 F.2d 646, 650 n.4 (7th Cir.*), cert. denied*, 484 U.S. 965 (1987)).

The defendants argue that Johnson's suggestive lineup allegations cannot support a § 1983 claim because he does not allege grounds for concluding that his trial—in which he was acquitted—was unconstitutionally unfair. Johnson, however, has also alleged police misconduct— namely, an improper scheme by Arevalo to manufacture a prosecution of Johnson, of which the allegedly suggestive lineups were only a part. The court, therefore, cannot assume that Johnson will be unable to demonstrate "extraordinary circumstances" in which suggestive lineups consisted of at least a component of a constitutional violation by Arevalo. It, therefore, would not necessarily be futile to add the lineup-related allegations in the context of Johnson's malicious prosecution claim.

The fact that Johnson would have to rely on Arevalo's broader pattern of misconduct to establish a constitutional violation, however, merely brings him back to his municipal liability problem. Johnson has failed to allege facts sufficient to support municipal liability for the

malicious prosecution as a whole; he has only alleged sufficient facts for the isolated use of the lineups. "As [the Supreme Court's] § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that . . . the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (quoting *Monell*, 436 U.S. at 694). Even if Metro was the moving force behind the decision to put Johnson's photograph in slot 5, he has not adequately alleged that it was the moving force behind the extraordinary circumstances that might have resulted in an actual constitutional deprivation. Therefore, while adding the lineup-related allegations would not be wholly futile, in that they bolster Johnson's claims against Arevalo, the amendment does appear to be futile with regard to establishing municipal liability. The amendment, therefore, would not moot Metro's pending motion.

None of the other factors relevant to a motion to amend weigh strongly against allowing the amendment. It is troubling that, this early in the parties' litigation, Johnson has already missed more than one deadline and especially troubling that his counsel characterized a motion as unopposed when it was not.[3] Nevertheless, the defendants have, for the most part, ultimately acquiesced in Johnson's delays, and the court sees very little reason that there would be any prejudice based on allowing the amendment now. Johnson's motion, therefore, will be granted.[4] However, because the amendment's allegations related to municipal liability are insufficient, the court will not dismiss the pending motion to dismiss as moot. Although Metro asks the court to

---

[3] It also borders on unprofessional conduct for counsel to have copied verbatim over 70 paragraphs from a complaint filed by another lawyer in an unrelated case.

[4] The court's ruling is without prejudice to any future motion to strike specific parts of the Amended Complaint.

rule on that motion now, the interests of justice favor allowing Johnson one more opportunity to formally respond. Given the number of extensions already granted for that response, Johnson is strongly discouraged from seeking another one.

## **CONCLUSION**

For the foregoing reasons, Motion for Leave to Amend Complaint (Docket No. 21) is hereby **GRANTED**. The Clerk's Office is **DIRECTED** to enter Johnson's proposed Amended Complaint (Docket No. 21-1) onto the docket as his Amended Complaint. Johnson is **ORDERED** to file a response to Metro's Motion to Dismiss (Docket No. 8) within 14 days of the entry of this order.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge